All right. Good morning, everybody. Let me tell you, first of all, that Judge Cates is a member of this panel. Unfortunately, she was unable to be here today. However, she will listen to the arguments on the Supreme Court's website and be a fully participating member of this panel. So our last argument of the day is People v. Gilbert Evans, Clause No. 5-14-0201 and 0299. And it's Ms. Lacey? I'm Lacey. Lacey, you may proceed. May it please the Court? I'm Jennifer Lacey with the Office of the State Appellate Defender, and I represent the defendant appellant, Mr. Gilbert Evans. Today I'd like to focus on the first two issues. The first issue is whether the trial court used its discretion in admitting the hearsay statements as police procedure. And the second issue is whether the racially charged statement attributed to Mr. Evans was an improper injection of race into the trial. I believe the underlying facts for these two issues demonstrate that Mr. Evans was deprived of his right to a fair trial, where an admissible hearsay and this racially charged statement painted him as a crack dealer and a racist. All of the hearsay attributed to Campbell and the unidentified driver of the yellow Cadillac was admitted purportedly to explain police procedure. Or that there was a co-conspirator. So it was admitted at trial court as police procedure, and the State is arguing on appeal that it should have been admitted, or that it is admissible as statements of a co-conspirator. And I'll address that as well. Okay. So the police procedure rule allows officers to testify to what would otherwise be hearsay if it's not being used to prove the truth of the matter asserted, and instead is necessary to show the steps that an officer took in his investigation. Agent Bellevue couldn't have testified to what Campbell told him before he reached the house on 23rd Street, because it would explain the steps he took in getting to that house to buy the crack cocaine. However, it's the testimony that he gives while at this house that is inadmissible hearsay. Because once there, Agent Bellevue did nothing but sit and wait to pay for and receive crack. All of the Caldwell testimony had no relevant non-hearsay purpose. So testimony where Campbell yells to Caldwell for another package, or where Campbell claims a driver was looking for crack and that driver asked for Gil, all of Bellevue's testimony here only went to prove the very issue the trier of fact was to decide, which was whether Mr. Evans delivered crack. So while Bellevue could have testified about the existence of conversations, the law prohibits him from testifying about the substance of those conversations. But the defendant, the state says that it actually helped explain kind of their course of investigation in the sense that they didn't go after the yellow Cadillac and waited instead for the white Cadillac. So I think the record's clear that Caldwell for a package is nothing, it does nothing more than to identify that you can call Gil for crack and does not distinguish that the yellow Cadillac, the driver of the yellow Cadillac was not there to sell the crack. Additionally, these statements came in on direct examination and before trial counsel even made any reference to the driver of the yellow Cadillac. And these statements went to the very issue that was in dispute. And case law such as People v. Jura tells us that when the substance of the hearsay goes to the very issue that the jury is to decide that it's an admissible hearsay. And also these did not show any police procedure whatsoever. The statements include things like Campbell's approaching Bellevue's vehicle and he said something about a gill and then said crack was on the way. Campbell told Bellevue that the driver of the yellow Cadillac wanted crack and this was before the driver ever spoke. And then he yells, Caldwell, the driver of the yellow Cadillac, is also looking for a package. So these did nothing to show what Agent Bellevue was doing because he was in fact doing nothing but sitting in his car. All that he had to testify to was that after the driver of the yellow Cadillac left, he was still sitting there waiting because he had yet to pay for or receive crack. None of these, none of the substance of these conversations needed to come in. And identical to People v. Jura where the court found irreversible error, the prosecutor here relied on the substance of the call gill statements heavily in her opening and closing argument to establish Mr. Evans' guilt. And this went far beyond explaining police procedure where she said things like, Bellevue can hear the man who sold him crack. The drug dealer say, does anybody know where gill is? Call gill. A yellow Cadillac pulls up, also asking for a person named gill. He indicated or he said something to the effect of, I'm looking for crack. Bellevue heard his drug dealer Campbell say, call gill. He was informed drugs were on the way. As he waited, he saw a yellow Cadillac pull up, also asking for crack. They were told, you're going to need to call gill or someone said call gill. The driver of the yellow Cadillac also wanted drugs. There weren't any there yet. He didn't want to wait. He was going to go around the block. He also wanted to call gill. I submit to you, Gilbert Evans. The prosecutor solely relied on this for the truth of the matter asserted in the statement. And the statement had no relevant non-hearsay purpose. What about the co-conspirator exception? So the state now argues on appeal that these should have been admissible as statements of a co-conspirator. However, the state is precluded from making this argument on appeal where it argues the exact opposite at the trial court level. I believe it's pages 19 to 25 of the record. The state argues the call gill statements are not being offered for the truth of the matter asserted, but are being offered to further prove the officer's actions. So they argue the exact opposite at the trial court level. And trial counsel was going to present an argument in opposition to these being admitted as statements of a co-conspirator and was precluded from doing so. The record shows that she was about to submit case law and argue this point and was told no, these are coming in as police procedure, and she withdrew that case law and was prevented from arguing this issue. So therefore, I think the state should be stopped from making this argument now. The state also claims that, well, I'm not sure. I don't have written down exactly what was objected to at what stage, but there was a variety of some being objected to at trial, others not, some at post-trial, others not. So what is your response with respect to a plain error argument? The state is correct on this point. We are asking the court to reach the issue through plain error, and I think you absolutely can do so. So on the first issue, trial counsel did object to prior trial, but she did not preserve the objection. However, I think this first issue can be considered under the first prong of plain error where the evidence was closely balanced. So Bellevue testified that he couldn't see exactly what was going on in the vehicle. However, he claims that he did see Mr. Evans receive the money from Campbell. However, he was pulled over about three minutes later, and there was no evidence that he had this money on him. Did he have money, but it wasn't marked? Am I right about that? So the officers go through a lengthy process. They take pictures of this money, and they record serial numbers on this money specifically for the purpose of proving that a drug deal occurred. And they pulled Mr. Evans over about three minutes afterward for a seat belt violation, searched him and his vehicle, photographed him, searched his passenger. They never found any crack on him. And when it comes to the money issue, they claimed that they felt it would be suspicious to look at the money to determine if it was this marked money. They didn't want to blow their cover. Right, so they didn't look at it. Even though they go through this lengthy process specifically with this money to use it later on at trial to convict someone, they never checked the money. And they pulled him over for a seat belt violation. And I find it incredible that taking pictures of a person for a seat belt violation and searching him and his passenger doesn't raise suspicions when looking at this money would. So I would also point this court to People v. Jura. And in that case, it did come up in the context of an ineffective assistance of counsel claim. However, the court did find reversible error in that case. Three officers testified that they saw Jura, who was charged with unlawful use of a weapon. They testified that they saw him with a weapon and saw him put the weapon in a garbage can. And they recovered a loaded gun from that garbage can. However, like here, they also testified to an admissible hearsay about a 911 call identifying a man with a gun in that alley. And the state, like here, relied heavily on the substance of that call to prove Jura's guilt in her opening and closing statement. So even though we've got this officer testimony saying they saw him with a gun, they found that that hearsay constituted reversible error. So I think we've got a strong plain error argument here. Under the first prompt, plain error. And I will address a racial argument and rebuttal, unless you have any questions for me. No. Thank you, Ms. Lassie. And Ms. Camden, you may proceed. May it please the Court? Counsel. Jennifer Camden on behalf of the People. Because both issues one and two are being presented under plain error, I'd like to focus first on the evidence of guilt, which would be relevant in the first prompt. No, I'm useless. Sorry. First prompt in that analysis. So Bellevue arranged with Campbell to buy crack cocaine at a particular location. Campbell directed him to this location. Campbell, the defendant then arrived in a car, and Bellevue saw this happen. Campbell, once the defendant arrived on the scene, walked over to Bellevue's car and asked Bellevue for the money for the crack. Bellevue said that he didn't want to pay up front for it. And Campbell then shuttled over to the defendant's car and had a conversation, during which time Bellevue heard the defendant say, essentially tell him that he needs to pay first or leave. The defendant looked back at Bellevue as he said this, and Bellevue could see the defendant's face. Campbell then walked back over to Bellevue's car, said essentially no money, no crack. Bellevue gave Campbell the money. Campbell then shuttled back over to the defendant's car. Bellevue saw Campbell give the defendant the money. Then Campbell moved his body near the defendant's car so that Bellevue couldn't see exactly what happened next. And the next thing that happened was that Campbell walked back over to Bellevue's car, holding loose rocks of crack in his upturned, cupped hand. So that's the direct evidence of the transaction with which the defendant was charged and of which the defendant was convicted here. And the defendant was then almost immediately pulled over and soon thereafter identified by Bellevue as the person with whom he'd seen Campbell dealing. So all of the statements that the defendant on appeal challenges as inadmissible in his Issue 1 were stated before the defendant showed up on the scene. And none of them came into play in what I just recited about what happened when the defendant showed up on the scene. That's very strong evidence of guilt. And so the defendant hasn't shown that a reversible error occurred in the admission of any of the statements that occurred before the defendant showed up at the scene. Because had none of those statements been admitted, the jury still would have heard what I just described about what Bellevue actually saw and heard regarding the transaction. Also, the defendant was charged with a conspiracy charge. And so the question of whether the defendant and Campbell were in a conspiracy to distribute the crack and deliver it to Bellevue was an issue before the jury. So some of these statements said that the one that the defendant challenges most, which was the statement that Campbell made about the driver of the yellow Cadillac, Paul Gill of the yellow Cadillac was also looking for a package, was probative of the conspiracy. And while the state below did argue that certain statements were admissible under the police procedure exception, and while the court below did not admit these statements under the co-conspirator exception, this court can affirm for any reason in the record that Campbell's statements could have been admitted under that theory. And in fact, a defendant... What about your opposing counsel's argument that at trial, defense counsel was precluded from arguing against the co-conspirator exception? And the record does support that to some extent. Well, when the state said... When the defendant moved in with me to exclude some of these statements, and we disagree about just what statements were at issue during the ensuing argument, although the defendant does agree that all statements ultimately were forfeited for review, so anything that's under plain error. But the state argued that the court should admit them under the police procedure exception. And the court agreed. Yeah, and the court agreed. And never got to any other possible grounds on which they could be admitted. Right, and so I don't see that as an affirmative act of preclusion by the state, except insofar as the state made its argument that it wanted to make. The defendant asked for clarification about whether the court had admitted these statements under the co-conspirator exception, and the court said no under the police procedure exception, and the defendant then withdrew, as the defendant said, for their argument on the co-conspirator exception. The general principle that the appellate court can affirm for any reason that's apparent in the record isn't limited to those reasons that the defendant on appeal says that he or she has argued to his or her satisfaction in the trial court. It's any reason that this court can find in the record. And although the defendant argues that it would be unfair to him to affirm on a basis, or to affirm the admission of these statements on a basis not ruled on by the circuit court, it would actually be unfair to the people to find it to reverse and order a new trial if the record reflects a basis for the admission of these statements. Also, the issue isn't just whether any statements were inadmissible. It's whether they prejudiced the defendant manifestly and whether there was a clear abuse of discretion. And here, where there was evidence of a conspiracy that existed at the time that the statements were made and where the evidence of Bellevue's testimony of what he saw and heard during the transaction with the defendant was clear and didn't rely in any way on any of the statements that had been made before the defendant appeared on the scene, this court should decline the defendant's plain error argument and affirm the defendant's conviction and sentence. I can address issues two and three if this court has any. And I think you're closing because you said you would address the Shellstrom issue in rebuttal. So anyway, go ahead and argue anything that's in the briefs if you want. Well, about the Shellstrom issue, because I do think that this is actually the more interesting issue, the defendant argues that in the reply brief at pages 14 through 16 that in the caption of the pro se pleading, and again in the text, he mentioned the 2-1401 theory first. But before, he mentioned post-conviction theory of relief. And the argument seems to be that citation order should matter when deciding whether the court characterized the petition as a post-conviction petition because it was labeled a post-conviction petition or whether the court re-characterized the petition within the meaning of Shellstrom. But the Post-Conviction Hearing Act itself at section 122-1D states that to invoke the act, all the petitioner must do is mention either in the heading or in the body of the filing that he's filing under the Post-Conviction Hearing Act. And here, he did both. Nothing more is required to invoke the Post-Conviction Hearing Act. And the invocation of the act requires certain acts on the part of the trial court, that the trial court rule on it within 90 days lest it move to second stage, and that the court do so without input from either side. And here, that's what this court did. And although the defendant points to the general standards that a post-conviction petition is to be generously construed, he's not arguing that this petition stated with just a claim or was erroneously summarily dismissed as a first-stage petition. He's only arguing that Shellstrom applied. This petition alleged that essentially the defendant was convicted due to a conspiracy between the trial judge and defense counsel. The defendant also isn't arguing that the court abused its discretion in characterizing the filing as a post-conviction petition. After all, it did state that he was wishing to proceed in the alternative under the act. And finally, the defendant argues that Shellstrom didn't explicitly exclude within its ambit those petitions that list the Post-Conviction Hearing Act as an alternative basis for relief. But first, it's the defendant's burden to show error, and he hasn't done that here. Shellstrom states that it applies to pleadings that a pro se litigant has labeled as a different action cognizable under Illinois law. Throughout Shellstrom, he talks only of pleadings that are not labeled under the Post-Conviction Hearing Act at all. And I discussed in the answer brief that the defendant is asking this court to expand Shellstrom past the justifications for the rule that the notice and opportunity withdrawal requirements were met here because the defendant obviously knew that he was asking the court to consider his claims under the Post-Conviction Hearing Act, which is what all the Shellstrom requires. All right. Thank you, Ms. Kim. Ms. Lassie, Rebecca? So first, I'll address Shellstrom in issue number three. So I believe there's, from my findings, there's no case law directly addressing the issue where a defendant asks for relief first under one method and then also under the Post-Conviction Hearing Act. Don't you think you're asking us to extend Shellstrom? I don't think that we're asking you to extend Shellstrom, but I think we are making a policy argument that Shellstrom encourages this protection for these pro se defendants who have little legal knowledge and are drafting these pleadings, especially considering the Post-Conviction Hearing Act. But how can it be considered a re-characterization? So I would note that he first asked for relief under Section 214.01 and only in the alternative asked for relief under the Post-Conviction Hearing Act. If it was flipped, then you wouldn't be arguing that? I don't think I would. But I do think that the law encourages us to give some sort of extra protection to these defendants who have little legal knowledge when they're making these pleadings. And I think that's why the Shellstrom admonishments are so important here. I wanted to address the racial statement attributed to Mr. Evans briefly. So on top of the hearsay that came in repeatedly to establish whether you could call guilt or crack, we have this statement attributed to him which essentially paints him as a racist where Bellevue testified that he referred to Bellevue and a confidential source as those white motherfuckers. And I apologize for the abrasive language, but that's what the jury heard. I think we've all heard worse. So I believe that this improperly injected race into Mr. Evans' trial where it was not relevant to the determination of his guilt or innocence. Well, you know, I've been struggling with really where the racial overtone is because Bellevue was the only white participant, correct? No, his sidekick in the park. Correct. So it was almost to me like it could have been a way to identify. I'm sure that their use of motherfucker is kind of in the street language is pretty darn prevalent. And it may even be kind of innocuous. So, I mean, to me, I was having difficulty finding the offense, quite honestly. Okay. That's a good point. I think in my reply brief I initially said we could omit the words white motherfucker. However, I think it's just the adjective white coupled with that language that paints him as having these racial prejudices. And I think the state side of the case, People v. Johnston, supports that. There the court found that racial references were relevant when the defendant was charged with two counts of ethnic intimidation. And I think a hypothetical helps to show this. If we had a white defendant charged with a racially motivated crime and he was accused of saying those black motherfuckers, I think we'd all agree this needs to come in to establish his racial prejudice. However, he wasn't charged with a racially motivated crime. Right. So I think in a case like that, we say, yes, this comes in. But a case where this is about whether somebody dealt crack, race plays no part. And I think it's an arbitrary injection of race into the trial where it's just simply not relevant. And if it were just Valdez's testimony, we might not be here arguing this. But again, like the hearsay, the prosecutor relied on this in opening closing argument and saying and drawing attention to Mr. Evans' word choice, saying things like, Agent Bell, you heard this defendant saying, tell that man. And he actually used the phrase, tell that white motherfucker to give up his money. So I believe the prosecution's reliance on this absolutely injected race into the trial. And I would compare it to People v. Brown. And while that case reversed on a different issue before reaching the racial element, it did note that just two references to race were improper, where we had at least three in this case. So in conclusion, I believe that all of this came in under police procedure, all of the call of guilt statements. And it absolutely was inadmissible hearsay that went to prove the truth of the matter asserted. The call of guilt statements, there's at least ten of these between Bellevue and the prosecutor. And, well, I believe it was a one-day trial. This all went to the jury repeatedly. And I do believe the evidence was close, where Mr. Evans was pulled over almost immediately and had no money on him that was from the officer Bellevue. There was no cell phone on him. They just said that he didn't have the money. They didn't check. Right. So he had some sort of money. But for reasons that I don't know with water, they did not check. So I would ask the court to find plain error. All right. Thank you both for your briefs and your arguments. We'll take this matter under advisement and enter a decision in due course. The court will be in recess until 9 o'clock tomorrow morning.